**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| **1291 BRITAIN DR PCPRE, LLC,** | ) | CASE NO. 25-54940 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| IN RE: | ) | CASE NO.  25-54943 |
| | ) | |
| **215 PAPER MILL RD PCPRE, LLC,** | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

_____

**DISCLOSURE STATEMENT TO ACCOMPANY**
**DEBTORS' JOINT PLAN OF LIQUIDATION**
_____


**SCROGGINS, WILLIAMSON & RAY, P.C.**

**Ashley Reynolds Ray**
**Georgia Bar No. 601559**
**J. Hayden Kepner, Jr.**
**Georgia Bar No. 416616**
**4401 Northside Parkway**
**Suite 230**
**Atlanta, GA 30327**
**(404) 893-3880**

**Counsel for the Debtors**


**Dated:  December 15, 2025**

# ARTICLE I
# INTRODUCTION

This disclosure statement ("**Disclosure Statement**")[1] is submitted by 1291 Britain Dr PCPRE LLC ("**1291 Britain Dr**") and 215 Paper Mill Rd PCPRE LLC ("**215 Paper Mill Rd**"), each a debtor and debtor-in-possession in the above-styled Chapter 11 cases (collectively the "**Debtors**"*)*, to provide information to all of their known creditors and equity interest holders about the Debtors' Joint Plan of Liquidation (the "**Plan**") filed by the Debtors.  The purpose of the Disclosure Statement is to provide information of a kind and in detail sufficient to enable Creditors and Equity Interest Holders in impaired Classes to make an informed judgment regarding whether to accept or reject the Plan and to inform Holders of Claims and Equity Interests in the unimpaired Classes of their treatment under the Plan.

All Holders of Claims against and/or Equity Interests in the Debtors are encouraged to read this Disclosure Statement, the Plan and other Plan Documents in their entirety as soon as possible.  The Plan Documents, once filed, shall be available for review in the office of the clerk of the Bankruptcy Court, or online through the Court's ECF system, www.ganb.uscourts.gov.  Holders of Claims or Equity Interests may also obtain a copy of the Plan Documents by contacting counsel for the Debtors by a written request sent to the address listed on the cover page of this Disclosure Statement.  Each of the Plan Documents is an integral part of the Plan and are incorporated by reference and made a part of the Plan.

The Plan constitutes a chapter 11 plan of liquidation for each of the Debtors. The Plan provides for payments to creditors from cash on hand as of the Effective Date following the sale of certain real properties owned by the Debtors.  The Debtors believe that the Plan provides Creditors with the greatest possible value that can be realized on their respective claims and that the Plan is in the best interests of all Creditors.  If the Plan is not confirmed by the Bankruptcy Court, the Debtors may be forced to convert their Chapter 11 cases to cases under Chapter 7 of the Bankruptcy Code.  The Debtors believes that, in the event their cases were converted to Chapter 7 of the Bankruptcy Code, Creditors would receive substantially smaller distributions than are provided for in the Plan.  Consequently, the Debtors seek confirmation of the Plan and urges all Creditors to vote to accept the Plan.

---

[1] Unless otherwise defined herein, capitalized terms used herein shall have the same meanings ascribed to them in the Plan.

**1.01    Disclaimer**

ALL CREDITORS AND EQUITY INTEREST HOLDERS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETIES.  PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, THE DISCLOSURE STATEMENT, AND ANY RELATED EXHIBITS AND OTHER PLAN DOCUMENTS AS A WHOLE.

THIS DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN PROVISIONS OF THE PLAN, STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE PLAN, EVENTS IN THE DEBTORS' CHAPTER 11 CASES, AND FINANCIAL INFORMATION.  ALTHOUGH THE DEBTORS BELIEVE THAT THE PLAN AND RELATED DOCUMENT SUMMARIES ARE FAIR AND ACCURATE, SUCH SUMMARIES ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS.  FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTORS' MANAGEMENT, EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED.  FOR THE FOREGOING REASONS, AS WELL AS THE COMPLEXITY OF THE DEBTORS' FINANCIAL MATTERS, THE DEBTORS ARE UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN, INCLUDING THE FINANCIAL INFORMATION, IS WITHOUT ANY INACCURACY OR OMISSION.   THE FINANCIAL DATA SET FORTH HEREIN, EXCEPT AS OTHERWISE SPECIFICALLY NOTED, HAS NOT BEEN SUBJECTED TO AN INDEPENDENT AUDIT.

NEITHER THE DEBTORS NOR THE BANKRUPTCY COURT HAVE AUTHORIZED THE COMMUNICATION OR REPRESENTATION BY ANY PERSON OR ENTITY (INCLUDING ANY OF THE DEBTORS' AGENTS, OFFICERS, DIRECTORS, EMPLOYEES, ACCOUNTANTS, FINANCIAL ADVISORS, ATTORNEYS OR AFFILIATES) CONCERNING THE DEBTORS, THEIR OPERATIONS, FUTURE REVENUE, PROFITABILITY, VALUE OR OTHERWISE, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.   THE DEBTORS MAKES NO SUCH REPRESENTATIONS OTHER THAN THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS BELIEVED TO BE CORRECT AT THE TIME OF THE FILING OF THE DISCLOSURE STATEMENT. ANY INFORMATION, REPRESENTATION OR INDUCEMENT MADE TO SECURE OR OBTAIN ACCEPTANCES OR REJECTIONS OF THE PLAN THAT ARE OTHER THAN, OR ARE INCONSISTENT WITH, THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY ANY PERSON IN ARRIVING AT A DECISION TO VOTE FOR OR AGAINST THE PLAN.    ANY SUCH ADDITIONAL INFORMATION,

REPRESENTATIONS AND INDUCEMENTS SHOULD BE IMMEDIATELY BROUGHT TO THE ATTENTION OF THE DEBTORS' COUNSEL.

EXCEPT FOR HISTORICAL INFORMATION, ALL THE STATEMENTS, EXPECTATIONS, AND ASSUMPTIONS, INCLUDING EXPECTATIONS AND ASSUMPTIONS CONTAINED IN THIS DISCLOSURE STATEMENT ARE FORWARD LOOKING STATEMENTS THAT INVOLVE A NUMBER OF RISKS AND UNCERTAINTIES. ALTHOUGH THE DEBTORS HAVE USED THEIR BEST EFFORTS TO BE ACCURATE IN MAKING THESE FORWARD LOOKING STATEMENTS, IT IS POSSIBLE THAT THE ASSUMPTIONS MADE BY THE DEBTORS MAY NOT MATERIALIZE. IN ADDITION, OTHER IMPORTANT FACTORS COULD AFFECT THE PROSPECT OF RECOVERY TO CREDITORS, INCLUDING, BUT NOT LIMITED TO, THE INHERENT RISKS OF LITIGATION AND THE AMOUNT OF ALLOWED CLAIMS.

### 1.02    Disclosure Statement

This Disclosure Statement sets forth certain information regarding the Debtors' pre-petition history and significant events that have occurred during the Debtors' Chapter 11 cases. This Disclosure Statement also describes the Plan, alternatives to the Plan, effects of confirmation of the Plan, and the manner in which distributions will be made under the Plan. In addition, the Disclosure Statement discusses the confirmation process and voting procedures that Holders of Claims in impaired Classes must follow for their votes to be counted.

When and if confirmed by the Bankruptcy Court, the Plan will bind the Debtors and all Holders of Claims against and Equity Interests in the Debtors, whether or not they are entitled to vote or did vote on the Plan and whether or not they receive or retain any Distributions or Property under the Plan. Thus, all Claimants and Equity Interest Holders are encouraged to read this Disclosure Statement carefully. In particular, Holders of Impaired Claims who are entitled to vote on the Plan are encouraged to read this Disclosure Statement, the Plan, and any exhibits to the Plan or Disclosure Statement carefully and in their entirety before voting to accept or reject the Plan.

### 1.03    The Bankruptcy Petition and the Filing of the Debtor's Plan

On May 5, 2025 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division (the "**Bankruptcy Court**"). Upon filing for Chapter 11 protection, the Debtors became "debtors-in-possession" under the Bankruptcy Code and have acted in that capacity since that time.

Simultaneously with the filing of this Disclosure Statement, the Debtors have filed their Plan. The Debtors, as proponent of the Plan, distribute this Disclosure Statement together with the Plan in order to solicit acceptances of the Plan. This introductory section is qualified in its entirety by the detailed explanations which follow and the provisions of the Plan. In the event of

conflict between anything stated in this Disclosure Statement and the Plan, the terms of the Plan will control.

### 1.04    Solicitation of Acceptances

Pursuant to a Court Order dated _____, 202__, those Creditors and Equity Interest Holders authorized to vote on the Plan must vote to accept or reject the Plan no later than **_____, 202__** (the "**Voting Deadline**"). If you hold a Claim in an Impaired Class, a ballot with which to indicate and file an acceptance or rejection of the Plan has been provided to you. You must complete and file your ballot on or before the Voting Deadline in order for your vote to count. Any ballot which is executed by the holder of any Allowed Claim or Allowed Equity Interest but does not indicate acceptance or rejection of the Plan shall be deemed to have accepted the Plan. Any other ballot not filed in accordance with the filing instructions on the ballot pertaining to the Plan shall not be counted for voting purposes.

*THE DEBTORS HEREBY SOLICIT APPROVAL OF THE PLAN BY THEIR CREDITORS AND EQUITY INTEREST HOLDERS. THE DEBTORS BELIEVES THE PLAN PROVIDES THE OPTIMUM RETURN TO CREDITORS AND THAT LIQUIDATION UNDER CHAPTER 7 OF THE BANKRUPTCY CODE WOULD RESULT IN A MUCH SMALLER DISTRIBUTION TO GENERAL UNSECURED CREDITORS THAN THEY WOULD REALIZE FROM THIS PLAN. THE DEBTORS URGE EACH CREDITOR TO VOTE IN FAVOR OF THE PLAN BY MARKING THE "ACCEPTS" BOX ON THE ENCLOSED BALLOT AND FILING IT WITH THE COURT ON OR BEFORE THE VOTING DEADLINE.*

### ARTICLE II
### HISTORY OF THE DEBTORS AND EVENTS DURING CHAPTER 11

*THE FOLLOWING STATEMENTS ARE MADE FOR INFORMATIONAL PURPOSES ONLY. THE DEBTORS RESERVES ALL RIGHTS REGARDING THE ACCURACY OF THE STATEMENTS BELOW. NOTHING HEREIN IS AN ADMISSION OF ANY FACT BY ANY PARTY.*

### 2.01    The Debtors' Businesses, Corporate Structures and General Histories.

(a)    215 Paper Mill Rd is a Florida limited liability company that owns and operates an 82-unit apartment complex known as The Carolina, located in Gwinnet Couty, Georgia. In 2020, 215 Paper Mill Rd purchased The Carolina property and took out a loan of Six Million Nine Hundred Sixty Thousand Dollars ($6,960,000) (the "**Paper Mill Loan**"), secured by The Carolina property, which was then assigned to Federal National Mortgage Association ("**Fannie Mae**").

(b)    1291 Britain Dr is a Florida limited liability company that owns and operates a 68-unit apartment complex known as Britain Village, located in Gwinnet Couty, Georgia. In 2020, 1291 Britain Dr purchased the Britain Village property and took

out a loan of Six Million One Hundred Sixty Thousand Dollars ($6,160,000) (the "**Britain Village Loan**"), secured by the Britain Village property, which was then assigned to Federal National Mortgage Association ("**Fannie Mae**").

**2.02   Events Precipitating Chapter 11 Filings.**   In March of 2025, Fannie Mae sent notices to each of the Debtors alleging that they were in defaults under the above-referenced loans due to, among other things, allegedly failing to make certain repairs required by Fannie Mae.  Fannie Mae then accelerated each of the loans and, on or about April 1, 2025, filed actions in the Superior Court of Gwinnet County, Georgia seeking the appointment of receivers for each of the Debtors and injunctive relief.  Each of the Debtors subsequently filed their Chapter 11 cases on the Petition Date in order to gain time to either refinance or sell their respective properties.

**2.03    Significant Events During Chapter 11 Case.**

**(a)    Petition Dates.**  As noted above, each of the Debtors filed its voluntary petition for bankruptcy on May 5, 2025.  Since that time, the Debtors have continued to operate their businesses and manage their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

**(b)    First Day Motions, Including Use of Cash Collateral.**  In connection with the filing of the Chapter 11 Cases  each of the Debtors filed various motions and applications seeking authority (i) to use cash collateral, (ii) to maintain their existing bank accounts, (iii) to prohibit utility companies from discontinuing utility service, and (iv) to retain the firm of Scroggins, Williamson and Ray, P.C. to represent them in their Chapter 11 Cases.  The Court subsequently granted each of those motions and applications. The Debtors' authorization to use cash collateral currently runs through January 11, 2026.

**(c)    Schedules and Statement of Financial Affairs.**  On May 23, 2025, each of the Debtors filed with the Court its schedules and statements required by Bankruptcy Rule 1007 (the "**Schedules**"), which, among other things, provide information concerning the Debtors' financial condition on the Petition Date.  These Schedules are available from the Office of the Clerk of the U.S. Bankruptcy Court for the Northern District of Georgia and are online at https://ecf.ganb.uscourts.gov (please note that a PACER account is required to view and download documents).

    i. According to 215 Paper Mill Rd's Schedules, as of the Petition Date, its assets consisted primarily of:

        (1)    Real property valued at $12,925,000.00.
        (2)    Personal property valued at $159,374.86.

    Its liabilities consisted of:

        (1)    Secured claims totaling approximately $6,960,000.00

(2)      Nonpriority unsecured claims totaling approximately $130,605.16.

ii.      According to 1291 Britain Dr's Schedules, as of the Petition Date, its assets consisted primarily of:

(1)      Real property valued at $10,575,000.00.
(2)      Personal property valued at $185,827.99.

Its liabilities consisted of:

(1)      Secured claims totaling approximately $6,160,000.00
(2)      Nonpriority unsecured claims totaling approximately $132,946.55.

**(d)      Motions to Extend Exclusive Right to File a Plan**.  At various times throughout the Chapter 11 Cases, each of the Debtors filed motions seeking to extend the time in which they would have the exclusive right to file their plans under Chapter 11 (the "**Exclusivity Period**"). On December 8, 2025, the Court entered consent orders extending the Exclusivity Period for each of the Debtors to December 15, 2025.

**(e)      Bar Date Orders.**  By Orders of the Bankruptcy Court dated September 4, 2025, the Court established November 3, 2025 as the Bar Date by which all creditors holding prepetition claims (including administrative expense claims under 11 U.S.C. § 503(b)(9) for goods delivered within 20 days prior to the Petition Date) were required to file proofs of claim or be barred from (i) asserting any claim against the Debtors, and (ii) voting on, or receiving distributions under, the Plan.  Certain creditors whose claims were listed in the Schedules and not identified as "contingent," "disputed" or "unliquidated" are not required to file proofs of claim.

**(f)      Negotiations for a Sale of the Debtors' Properties or Refinance of the Fannie Mae Loans.**  Throughout these Chapter 11 Cases, the Debtors have been in negotiations with various parties regarding a potential sale of their properties or a refinance of the Fannie Mae loans.  The Debtors have since determined that the best and quickest process to move forward is to sell their properties.  The Debtors are confident that a sale of their properties will result in sufficient proceeds to pay all allowed claims as set forth in the Plan.

Both Debtors have received indications of interest for the purchase of substantially all their assets at a purchase prices sufficient to pay all of their secure debt in full and to make a substantial distribution to general unsecured creditors. The Debtors have established December 16, 2025 as the deadline for submitting indications of interest.  They each intend to select buyers and enter into definitive asset purchase agreements no later than December 31, 2025. Such asset purchase agreements are expected to provide for a 30 day due diligence period following which the earnest money deposits will become nonrefundable, with the closing anticipated to occur 30 to 60 days after expiration of the due diligence period.

**2.04    Certain Federal Income Tax Consequences.**  The confirmation and execution of the Plan may have tax consequences to Holders of Claims and Equity Interests.  The Debtors do not offer an opinion as to any federal, state, local, or other tax consequences to Holders of Claims and Equity Interests as a result of the confirmation of the Plan.  All Holders of Claims and Equity Interests are urged to consult their own tax advisors with respect to the federal, state, local, and foreign tax consequences of the Plan.  This Plan is not intended, and should not be construed, as legal or tax advice to any Creditor, Equity Interest Holder, or other party in interest.

**2.05    Best Interests Test and Liquidation Analysis.**  Section 1129(a)(7) of the Bankruptcy Code requires that each Holder of an Impaired Claim or Equity Interest either (a) accept the Plan or (b) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such Holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  The Debtors assert that the values of any distributions to General Unsecured Creditors under cases converted to Chapter 7 of the Bankruptcy Code would be substantially less than the Distributions under the Plan.

Under the Plan, all Allowed Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims and Secured Claims are to be paid in full, including post-petition interest, on or as soon as practicable after the Effective Date.  General Unsecured Claims are anticipated to be paid in full, not including post-petition interest, within ninety (90) days after the Effective Date.

In contrast, if the Chapter 11 Cases were converted to cases under Chapter 7, a Chapter 7 trustee would be appointed in each of the cases to liquidate the Debtors' assets.  Such a scenario would likely result in the Chapter 7 trustees shutting down and closing The Carolina and Britain Village apartment complexes while he/she attempt to sell the real estate. Without an operating business and ongoing rental income, the value of such assets would be substantially suppressed. A Chapter 7 trustee may also allow Fannie Mae to foreclose on the properties, which could result in a foreclosure price substantially below the secured debts owed to Fannie Mae.  The result would be that Fannie Mae would not be paid the full amount of its secured claims, and the Debtors' unsecured creditors would receive no distribution whatsoever.  Even if the properties were sold at a sufficient price to pay Fannie Mae's secured claims in full, any distribution to unsecured creditors would likely be substantially reduced by the fees charged by the Chapter 7 trustee and his/her professionals.

Accordingly, the Debtors believe that confirmation of the Plan is in the best interest of its Creditors and Equity Holders in satisfaction of Bankruptcy Code Section 1129.

### ARTICLE III
### SUMMARY OF TREATMENT OF CLAIMS AND ESTIMATED RECOVERIES

The Claims against and Equity Interests in 215 Paper Mill Rd and 1291 Britain Dr are placed in separate classes in the Plan.  The Claims against and Equity Interests in 1291 Britain Dr are placed in Classes labeled 1A through 5A.  The Claims against and Equity Interests in 215 Paper Mill Rd are placed in Classes labeled 1B through 5B.  The following chart provides a

summary of treatment of each Class of Claims (and Administrative and Priority Tax Claims) and an estimate of the recoveries of each class.  The treatment provided in this chart is for information purposes only and is qualified in its entirety by the Plan.

## Class Structure and Summary of Distributions Under the Plan

## 215 Paper Mill Rd.

| Class No. | Claim/Interest | Treatment of Claim/Interest | Estimated Amount and Projected Recovery | Voting Rights |
|---|---|---|---|---|
| N/A | Administrative Expense Claims, including Professional Fees | Paid in full on the Effective Date or as soon as reasonably practicable thereafter. | Estimated Amount: $100,000<br><br>Estimated Recovery: 100% of Allowed Amount | Unimpaired and not entitled to vote |
| N/A | Priority Tax Claims | Paid in full on the Effective Date or as soon as reasonably practicable thereafter. | Estimated Amount: $0.00<br><br>Estimated Recovery: 100% of Allowed Amount. | Unimpaired and not entitled to vote |
| 1A | Priority Non-Tax Claims | Paid in full on the Effective Date or as soon as reasonably practicable thereafter. | Estimated Amount: $0.00<br><br>Estimated Recovery: 100% of Allowed Amount. | Unimpaired and not entitled to vote |
| 2A | Secured Claim of Fannie Mae | Paid in full, including post-petition interest, on the Effective Date or as soon as reasonably practicable thereafter. | Estimated Amount: $5,783,313.84<br><br>Estimated Recovery: 100% of Allowed Amount, plus post-petition interest. | Unimpaired and not entitled to vote |
| 3A | Other Secured Claims | Paid in full, including post-petition interest, on the Effective Date or as soon as reasonably practicable thereafter. | Estimated Amount: $0.00<br><br>Estimated Recovery: 100% of Allowed Amount, plus post-petition interest. | Unimpaired and not  entitled to vote. |
| 4A | General Unsecured Claims | Paid in full, without post-petition interest, within ninety (90) days after the Effective Date or a soon as reasonably practicable | Estimated Amount: $175,000<br><br>Estimated Recover: 100% of Allowed | Impaired. Entitled to vote. |

- 9 -

| Class No. | Claim/Interest | Treatment of Claim/Interest | Estimated Amount and Projected Recovery | Voting Rights |
|---|---|---|---|---|
| | | thereafter. | Amount without interest. | |
| 5A | Allowed Equity Interests | Retain their Equity Interests in the Debtor. | Estimated Recovery: 100% of Equity Interests | Unimpaired and not entitled to vote. |

## 1291 Britain Dr

| | Claim/Interest | Treatment of Claim/Interest | Estimated Amount and Projected Recovery | Voting Rights |
|---|---|---|---|---|
| N/A | Administrative Expense Claims, including Professional Fees | Paid in full on the Effective Date or as soon as reasonably practicable thereafter. | Estimated Amount: $100,000 Estimated Recovery: 100% of Allowed Amount | Unimpaired and not entitled to vote |
| N/A | Priority Tax Claims | Paid in full on the Effective Date or as soon as reasonably practicable thereafter. | Estimated Amount: $0.00 Estimated Recovery: 100% of Allowed Amount. | Unimpaired and not entitled to vote |
| 1B | Priority Non-Tax Claims | Paid in full on the Effective Date or as soon as reasonably practicable thereafter. | Estimated Amount: $0.00 Estimated Recovery: 100% of Allowed Amount. | Unimpaired and not entitled to vote |
| 2B | Secured Claim of Fannie Mae | Paid in full, including post-petition interest, on the Effective Date or as soon as reasonably practicable thereafter. | Estimated Amount: $6,744,524.98 Estimated Recovery: 100% of Allowed Amount, plus interest. | Unimpaired and not entitled to vote |
| 3B | Other Secured Claims | Paid in full, including post-petition interest, on the Effective Date or as soon as reasonably practicable thereafter. | Estimated Amount: $0.00 Estimated Recovery: 100% of Allowed Amount, plus interest. | Unimpaired and not entitled to vote. |

|  | Claim/Interest | Treatment of Claim/Interest | Estimated Amount and Projected Recovery | Voting Rights |
|---|---|---|---|---|
| 4B | General Unsecured Claims | Paid in full, without interest, within ninety (90) days after the Effective Date or as soon as reasonably practicable thereafter | Estimated Amount: $341,000<br><br>Estimated Recovery: 100% of Allowed Amount, excluding interest. | Impaired and entitled to vote |
| 5B | Allowed Equity Interests | Retain their Equity Interests in the Debtor. | Estimated Recovery: 100% of Equity Interests | Unimpaired and not entitled to vote. |

## ARTICLE IV
## IMPAIRMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

**4.01   *Impaired Classes*.**   Class 4 is impaired under the Plan and entitled to vote whether to accept or reject the Plan.

**4.02   *Unimpaired Classes*.**   Classes 1, 2, 3 and 5 are unimpaired under the Plan. These classes are deemed to have accepted the Plan under the provisions of Section 1126(f) of the Bankruptcy Code.

## ARTICLE V
## TREATMENT OF CLASSES UNDER THE PLAN

**5.01   *In General.*** Claims and Equity Interests will be treated under the Plan in the manner set forth in this Article V. Except as otherwise specifically provided in the Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Allowed Equity Interests pursuant to the Plan will be in full and final satisfaction, settlement, release, extinguishment, and discharge of their respective Allowed Claims, of any nature whatsoever, and Allowed Equity Interests.

**5.02   *Unclassified Claims*.** Each Holder of an Allowed Administrative Expense Claim or an Allowed Priority Tax Claim will receive the treatment set forth in Article II of the Plan.

**5.03   *Class 1: Priority Non-Tax Claims.*** Each holder of an Allowed Priority Non-Tax Claim, if any, designated in Class 1A or 1B shall be paid as follows:

(a)   In full, in Cash, on the later of the Effective Date or, if an objection to such Claim is asserted, five business days following the date of a Final Order allowing any such Claim; or

(b)   Upon such other terms as may be agreed to between the applicable Debtor and a Holder of an Allowed Priority Non-Tax Claim.

Distributions shall be made from assets of the Estate against which the Allowed Priority-Non-Tax Claim is asserted. Class 1 is unimpaired by the Plan. Holders of Class 1 Claims are not entitled to vote to accept or reject the Plan.

**5.04  *Class 2:  Secured Claim of Fannie Mae*.**  Class 2 is divided into the following subclasses:

(a)  ***Class 2A- 1291 Britain Dr. PCPRE, LLC d/b/a Britain Village*-** Class 2A consists of all Allowed Secured Claims asserted by Fannie Mae against 1291 Britain Dr. PCPRE, LLC. Fannie Mae filed Proof of Claim No. 5 on August 5, 2025 (the "**Fannie Mae/Britain Village Claim**"), asserting an unliquidated Secured Claim in the amount of not less than $5,793,313.84, secured by substantially all of the Debtor's assets. The Debtor disputes the calculation and allowable amount of the Fannie Mae/Britain Village Claim, and the final Allowed Amount will be determined by the Bankruptcy Court. The Allowed Amount of the Fannie Mae/Britain Village Claim will be paid in full as soon as practicable after Effective Date.

(b)  ***Class 2B- 215 Paper Mill Rd. PCPRE, LLC d/b/a The Carolina*-** Class 2B consists of all Allowed Secured Claims asserted by Fannie Mae against 215 Paper Mill Rd. PCPRE, LLC. Fannie Mae filed Proof of Claim No. 8 on August 5, 2025 (the "**Fannie Mae/Carolina Claim**"), asserting an unliquidated Secured Claim in the amount of not less than $6,744,524.98, secured by substantially all of the Debtor's assets. The Debtor disputes the calculation and allowable amount of the Fannie Mae/Carolina Claim, and the final Allowed Amount will be determined by the Bankruptcy Court. The Allowed Amount of the Fannie Mae/Carolina Claim will be paid in full as soon as practicable after Effective Date.

**5.05  *Class 3:  All Other Secured Claims*.**  Each Allowed Other Secured Claim in Class 3A or 3B, if any, shall be satisfied as soon as practicable on or after the Effective Date, at the applicable Debtor's option, as follows (i) by the transfer, assignment and conveyance by the Debtor of the collateral securing such Class 3A or Class 3B Claim to the Holder of such Allowed Secured Claim in full and final satisfaction of such Allowed Secured Claim, (ii) by the sale of the collateral securing such Allowed Secured Claim, following Designated Notice, and the payment by the Debtor to the Holder of such Allowed Secured Claim of the net sale proceeds in an amount equal to the value of such Holder's interest in the collateral in full and final satisfaction of such Allowed Secured Claim, or (iii) by payment of Cash by the Debtor to the Holder of such Allowed Secured Claim in an amount equal to the value of such holder's interest in the collateral securing the Allowed Secured Claim. Distributions shall be made from assets of the Estate against which the Allowed Other Secured Claim is asserted.

**5.06  *Class 4:  Allowed Unsecured Claims*.**  Each Allowed Unsecured Claim in Class 4A or 4B shall receive the following treatment:

(a)  ***Class 4A- 1291 Britain Dr. PCPRE, LLC d/b/a Britain Village*-** Class 4A consists of all Allowed Unsecured Claims asserted against 1291 Britain Dr. PCPRE,

LLC.  Each Holder of an Allowed Class 4A Claim shall receive payment in cash in an amount equal to their Allowed Claim, without interest, payable within ninety (90) days after the Effective Date, or if an objection is filed to such Claim, within five (5) business days of entry of an order Allowing such Claim.

(b)    ***Class 4B- 215 Paper Mill Rd. PCPRE, LLC d/b/a The Carolina***- Class 4B consists of all Allowed Unsecured Claims asserted against 215 Paper Mill Rd. PCPRE, LLC.  Each Holder of an Allowed Class 4B Claim shall receive payment in cash in an amount equal to their Allowed Claim, without interest, payable within ninety (90) days after the Effective Date, or if an objection is filed to such Claim, within five (5) business days of entry of an order Allowing such Claim.

**5.07  *Class 5:  Equity Interests*.**  Each Allowed Equity Interest in Class 5A or 5B shall receive the following treatment:

(a)    ***Class 5A- 1291 Britain Dr. PCPRE, LLC d/b/a Britain Village***- Class 5A consists of all Allowed Equity Interests in 1291 Britain Dr. PCPRE, LLC as of the Effective Date.  Holders of Allowed Equity Interests in Class 5A shall retain their Interests in the Debtor and shall receive distributions hereunder of all assets held by 1291 Britain Dr. PCPRE, LLC after payment of all Allowed Claims in Classes 1A through 4A and payment of any Post-Confirmation Debtor expenses.

(b)    ***Class 5B- 215 Paper Mill Rd. PCPRE, LLC d/b/a The Carolina***- Class 5B consists of all Allowed Equity Interests in 215 Paper Mill Rd. PCPRE, LLC as of the Effective Date.  Holders of Allowed Equity Interests in Class 5B shall retain their Interests in the Debtor and shall receive distributions hereunder of all assets held by 215 Paper Mill Rd. PCPRE, LLC after payment of all Allowed Claims in Classes 1B through 4B and payment of any Post-Confirmation Debtor expenses.

**ARTICLE VI**
**MEANS FOR IMPLEMENTATION AND EXECUTION OF PLAN**

**6.01  *Source of Cash for Distributions*.**  The Debtors shall each sell substantially all of their assets pursuant to an Asset Purchase Agreement substantially in the form of Exhibits 1A (Britain Village) and 1B (The Carolina) which shall be filed as a plan supplement no later than five days prior to the hearing on the Disclosure Statement.  The aggregate Purchase Price under each Asset Purchase Agreement shall be sufficient to pay all Allowed Claims in Classes 1A through 3A or 1B through 3B, as applicable and to make a distribution to Holders of Allowed Claims in Classes 4A and 4B, as applicable.

**6.02  *Administration of Claims*.**  Following the Effective Date, the Debtors shall each complete their respective reviews of Claims and shall initiate, file and prosecute any and all actions deemed necessary and appropriate to dispute, disallow, object to or otherwise quantify the Claims.  The Debtors shall take actions regarding the administration, reconciliation and settlement of Claims, and shall object to such Claims and prosecute Claims Litigation related to

such claims, until such time as the Debtors determine that further pursuit of litigation or actions objecting to such Claims is no longer cost efficient, and will be of no further benefit. **THE FAILURE TO OBJECT TO ANY CLAIM PRIOR TO THE COMMENCEMENT OF THE HEARING ON CONFIRMATION OF THE PLAN SHALL NOT BE DEEMED TO BE A WAIVER OF THE RIGHT TO OBJECT THEREAFTER TO SUCH CLAIM IN WHOLE OR IN PART FOR THE PURPOSE OF DISTRIBUTION.**

    **6.03** *Post-Confirmation Debtor Expenses.* Post-Confirmation Debtor Expenses, including Post-Confirmation Debtor Professional Fees, shall be paid by the applicable Post-Confirmation Debtor.

    **6.04** *Preservation of Rights of Action.* Except as otherwise expressly provided herein, any rights or Causes of Action accruing to or held by a Debtor or its Estate prior to the Effective Date shall be retained by the Post-Confirmation Debtor. The Plan, the Disclosure Statement and Schedules do not set forth an exhaustive list of all Causes of Action preserved under the Plan and vested into the Post-Confirmation Debtors and the failure to identify or list any particular Cause of Action therein shall not constitute a waiver or release of such Cause of Action. **ALL CAUSES OF ACTIONS NOT EXPRESSLY RELEASED OR WAIVED IN THE PLAN OR THE CONFIRMATION ORDER SHALL SURVIVE CONFIRMATION, AND THE ASSERTION OF CAUSES OF ACTIONS SHALL NOT BE BARRED OR LIMITED BY ANY ESTOPPEL, WHETHER JUDICIAL, EQUITABLE OR OTHERWISE**.

## ARTICLE VII
### LIMITATION OF LIABILITY, AND GENERAL INJUNCTION

    **7.01** *GENERAL INJUNCTION.* **PURSUANT TO SECTIONS 105, 1123, 1129 AND 1141 OF THE BANKRUPTCY CODE, IN ORDER TO PRESERVE AND IMPLEMENT THE VARIOUS TRANSACTIONS CONTEMPLATED BY AND PROVIDED FOR IN THE PLAN, AS OF THE EFFECTIVE DATE AND THROUGH THE CONSUMMATION DATE, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR IN THE CONFIRMATION ORDER, ALL PERSONS OR ENTITIES THAT HAVE HELD, CURRENTLY HOLD OR MAY HOLD A CLAIM, DEBT, OR LIABILITY AGAINST EITHER DEBTOR, THEIR ESTATES OR ANY OF THEIR RESPECTIVE PROPERTY, ARE AND SHALL BE ENJOINED AND BARRED TO THE FULLEST EXTENT PERMITTED BY LAW FROM TAKING ANY OF THE FOLLOWING ACTIONS ON ACCOUNT OF ANY SUCH CLAIMS, DEBTS, OR LIABILITIES, OTHER THAN ACTIONS BROUGHT TO ENFORCE ANY RIGHTS OR OBLIGATIONS UNDER THE PLAN OR THE PLAN DOCUMENTS: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING AGAINST EITHER DEBTOR, THEIR ESTATES, OR THEIR RESPECTIVE PROPERTY; (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST EITHER DEBTOR, THEIR ESTATES, OR THEIR RESPECTIVE PROPERTY; (C) CREATING, PERFECTING OR ENFORCING ANY LIEN OR**

ENCUMBRANCE AGAINST EITHER DEBTOR, THEIR ESTATES, OR THEIR RESPECTIVE PROPERTY; (D) ASSERTING A SETOFF, RIGHT OF SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY OR OBLIGATION DUE TO EITHER DEBTOR OR THEIR ESTATES; (E) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN OR THE CONFIRMATION ORDER; OR (F) INTERFERING WITH OR IN ANY MANNER WHATSOEVER DISTURBING THE RIGHTS AND REMEDIES OF EITHER DEBTOR OR THEIR ESTATES UNDER THE PLAN AND THE PLAN DOCUMENTS AND THE OTHER DOCUMENTS EXECUTED IN CONNECTION THEREWITH. THE POST-CONFIRMATION DEBTORS SHALL HAVE THE RIGHT TO INDEPENDENTLY SEEK ENFORCEMENT OF THIS GENERAL INJUNCTION PROVISION.   THIS GENERAL INJUNCTION PROVISION IS AN INTEGRAL PART OF THE PLAN AND IS ESSENTIAL TO ITS IMPLEMENTATION. NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, THE PROVISIONS OF THIS § 7.01 SHALL NOT RELEASE, OR BE DEEMED A RELEASE OF, ANY OF THE CAUSES OF ACTION.

7.02 *EXCULPATION*.   FROM AND AFTER THE EFFECTIVE DATE, THE DEBTORS, THEIR CURRENT OFFICERS AND DIRECTORS, AND THEIR PROFESSIONALS (ACTING IN SUCH CAPACITY), (COLLECTIVELY, THE "EXCULPATED PARTIES") SHALL NEITHER HAVE NOR INCUR ANY LIABILITY WHATSOEVER TO, OR BE SUBJECT TO ANY RIGHT OF ACTION BY, ANY PERSON OR ENTITY , INCLUDING ANY HOLDER OF A CLAIM, OR ANY OTHER PARTY IN INTEREST, OR ANY OF THEIR RESPECTIVE EMPLOYEES, REPRESENTATIVES, FINANCIAL ADVISORS, ATTORNEYS, OR AGENTS ACTING IN SUCH CAPACITY, OR AFFILIATES, OR ANY OF THEIR SUCCESSORS OR ASSIGNS, FOR ANY GOOD FAITH ACT OR OMISSION  IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, THE CHAPTER 11 CASE, FORMULATING, NEGOTIATING, OR IMPLEMENTING THE PLAN, THE DISCLOSURE STATEMENT, ANY PLAN DOCUMENT, OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION THEREWITH, THE SOLICITATION OF ACCEPTANCES OF THE PLAN, THE CONFIRMATION OF THE PLAN, OR THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN, <u>PROVIDED</u>, <u>HOWEVER</u>, THAT THE FOREGOING PROVISION SHALL NOT APPLY TO AN ACT OR OMISSION THAT IS DETERMINED BY A FINAL ORDER OF THE BANKRUPTCY COURT TO HAVE RESULTED FROM FRAUD OR CONSTITUTED WILLFUL MISCONDUCT OR GROSS NEGLIGENCE.   THE RIGHTS GRANTED UNDER SECTION 7.02 OF THE PLAN ARE CUMULATIVE WITH (AND NOT RESTRICTIVE OF) ANY AND ALL RIGHTS, REMEDIES, AND BENEFITS THAT THE EXCULPATED PARTIES HAVE OR OBTAIN PURSUANT TO ANY PROVISION OF THE BANKRUPTCY CODE OR OTHER APPLICABLE LAW.  IN FURTHERANCE OF THE FOREGOING, THE EXCULPATED PARTIES SHALL HAVE THE FULLEST PROTECTION AFFORDED UNDER SECTION 1125(E) OF THE BANKRUPTCY CODE AND ALL APPLICABLE LAW FROM LIABILITY FOR VIOLATION OF ANY

**APPLICABLE LAW, RULE OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCE OR REJECTION OF A PLAN.   ANY OF THE RELEASED PARTIES SHALL BE ENTITLED TO RELY, IN ALL RESPECTS, UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE PLAN.  THE EXCULPATION FROM LIABILITY PROVISION IN THE PLAN IS AN INTEGRAL PART OF THE PLAN AND IS ESSENTIAL TO ITS IMPLEMENTATION.   NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, THE PROVISIONS OF SECTION 7.02 OF THE PLAN SHALL NOT RELEASE, OR BE DEEMED A RELEASE OF, ANY CAUSE OF ACTION.**

**7.03** *Barton Doctrine*.  The "Barton Doctrine," *e.g. Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881) (Supreme Court held that a trustee cannot be sued without leave of the bankruptcy court), which prohibits a party from suing either a trustee, the officers of a debtor in possession, or their attorneys, in a non-appointing court for acts done in their official capacity, shall pertain to the provisions of Article VII of the Plan, and shall stand as one of the bases for enforcement of the provisions therein.  *See, e.g., Carter v. Rodgers*, 220 F.3d 1249, 1252 (11th Cir. 2000)(" [j]oining the other circuits that have considered this issue, we hold that a debtor must obtain leave of the bankruptcy court before initiating an action in district court when that action is against the trustee or other bankruptcy-court-appointed officer, for acts done in the actor's official capacity"); *Patco Energy Express v. Lambros*, 2009 U.S. App. LEXIS 25771 (11th Cir. 2009) ("[w]here a plaintiff neglects to obtain leave from the appointing court, a suit filed [against a bankruptcy trustee] in another court must be dismissed for lack of subject matter jurisdiction"); *In the Matter of Linton*, 136 F.3d 544, 545 (7th Cir. 1998); *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240-41 (6th Cir. 1993) ("[i]t is well settled that leave of the appointing forum must be obtained by any party wishing to institute an action in a nonappointing forum against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court .... counsel for trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee"); *In re Balboa Improvements, Ltd.*, 99 B.R. 966, 970 (9th Cir. BAP 1989) (holding that permission to sue debtor's attorney for alleged misconduct in the administration of an estate must be obtained from the bankruptcy court).

**7.04** *Continuation of Automatic Stay.*  The automatic stay arising out of Section 362(a) of the Bankruptcy Code shall continue in full force and effect until the Consummation Date, and the Debtors, and the Estates shall be entitled to all of the protections afforded thereby.  The Bankruptcy Court shall have the power to grant such additional and supplemental stays as may be necessary or appropriate to protect and preserve the Assets of the Debtors and the Estates or to permit the just and orderly administration of the Estates.

**7.05** *Regulatory or Enforcement Actions.*  Nothing in the Plan shall restrict any federal government regulatory agency from pursuing any regulatory or police enforcement action or performing its statutory duties against any Person or Entity in any forum, but only to the extent not prohibited by the automatic stay of Section 362 of the Bankruptcy Code or discharged or enjoined pursuant to Section 524 or 1141(d) of the Bankruptcy Code.  Nothing contained in Section 7.05 of the Plan is intended to, nor shall it, supersede or alter any applicable provisions of the Bankruptcy Code.

**7.06** *No Liability for Untimely Administrative Expense Claims.* Holders of Administrative Expense Claims (including Holders of any Claims for Postpetition federal, state or local taxes) that do not file an application or other Bankruptcy Court-approved pleading by the Administrative Expense Claims Bar Date, will be forever barred from asserting such Administrative Expense Claims against the Debtor(s), the Estate(s), or any of their respective Property.

## ARTICLE VIII
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

If a Proof of Claim is filed by any Creditor asserting a Claim for the same obligation which had previously been listed for such Creditor by the Debtor on the Schedules, then the Scheduled Claim shall be deemed a Disallowed Claim without the need for the Debtor or any party in interest to file an objection to such Scheduled Claim. The Claim asserted in the Proof of Claim shall be deemed to replace such Scheduled Claim and shall ultimately become an Allowed Claim, a Disputed Claim or a Disallowed Claim pursuant to the procedures set forth in the Plan.

Notwithstanding any other provisions of the Plan, no payments or distribution shall be made on account of a Disputed Claim unless and until such Claim becomes an Allowed Claim. In lieu of Distributions under the Plan by a Debtor to Holders of Disputed Claims, a Disputed Claims Reserve shall be maintained by each Debtor for payment of any Disputed Claim which becomes an Allowed Claim. Distributions on account of any Disputed Claim that has become an Allowed Claim shall be made as soon as is reasonably practicable following allowance of the Claim.

The Post-Confirmation Debtors shall have the authority to settle and resolve any Disputed Claim upon such terms and conditions as deemed appropriate and in the best interests of Creditors. Any such compromise and settlement shall be deemed final and binding upon all parties in interest in the Case. The Post-Confirmation Debtors shall not have any obligation to provide notice to or file and serve pleadings upon any such parties in interest and shall not have any requirement to obtain Bankruptcy Court approval, in connection with compromising these Claims.

## ARTICLE IX
## PROVISIONS REGARDING DISTRIBUTIONS

**9.01** *Dates of Distributions.* Holders of Allowed Claims in Classes 1-3 shall receive Distributions as soon as practicable after the Effective Date as described above in Article V. Holders of Allowed Claims in Class 4 shall receive Distributions within ninety (90) days after the Effective Date. Holders of Allowed Equity Interests shall receive Distributions once Holders of Allowed Claims in Class 1A – 4A or 1B – 4B, as applicable, and all Post-Confirmation Debtor Expenses are paid pursuant to Article V.

**9.02** *Interest on Claims.* Except as expressly provided in a Final Order entered in the Case or as expressly provided in the Plan (a) no holder of any Unsecured Claim shall be entitled

to interest accruing on or after the Petition Date on such Claim, and (b) interest shall not accrue or be paid upon any Disputed Claim with respect to the period from the Petition Date to the date a final Distribution is made thereon if and after such Disputed Claim, or any part thereof, becomes an Allowed Claim.

**9.03    *Means of Payment.***    All payments made pursuant to the Plan shall be in Cash and by any means reasonably selected by the Post-Confirmation Debtors, including check or wire transfer.

**9.04    *Rounding.***    Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction down to the nearest whole cent.

**9.05    *Unclaimed Property.***    Unclaimed Property shall be held in an "Unpaid Claims Reserve" to be held for the benefit of the Holders of Allowed Claims entitled thereto under the terms of the Plan.  For a period of 90 days following the Distribution to Holders of Allowed Claims (said period being hereinafter referred to as the "**Claiming Period**"), Unclaimed Property shall be held in the Unpaid Claims Reserve solely for the benefit of the Holders of Allowed Claims which have failed to claim such property.  During the Claiming Period, Unclaimed Property due the Holder of an Allowed Claim shall be released from the Unpaid Claims Reserve and delivered to such Holder upon presentation of proper proof by such holder of its entitlement thereto.  After the Claiming Period has expired, such Claim shall be treated as being disallowed, waived, and satisfied and any funds held in the Unpaid Claims Reserve shall be released back to the applicable Debtor and redistributed pursuant to the terms hereof.

**9.06    *Withholding Taxes.***    The Post-Confirmation Debtors shall be entitled to deduct any federal or state withholding taxes from any Distributions made with respect to Allowed Claims, as appropriate, and shall otherwise comply with Section 346 of the Bankruptcy Code. Notwithstanding anything to the contrary herein, the Post-Confirmation Debtors shall not be obligated to make any Distribution to any Creditor that has not provided requested tax identification information if such information is required to make a Distribution without withholding taxes from such creditor's Distribution.  Holders of Allowed Claims that have not provided tax identification information will be solicited for such information on or before any Distribution Date and included in the Distribution or in a subsequent Distribution once tax identification information is received from the holder.

## ARTICLE X
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**10.01  *Executory Contracts and Unexpired Leases.***    Any   executory contract or unexpired lease to which either Debtor is a party that is not subject to an Asset Purchase Agreement and has not been assumed or rejected by such Debtor pursuant to a Final Order of the Bankruptcy Court as of the Effective Date (unless a motion to assume or reject such executory contract or unexpired lease is pending as of the Effective Date) shall be deemed rejected by the Debtor on the Effective Date.  Notwithstanding anything to the contrary herein or in the Plan, all

insurance policies in force as of the Effective Date shall remain in effect following the Effective Date unless and until rejected by separate motion and/or terminated in accordance with their terms.

**10.02  *Rejection Damage Claims*.**  Claims arising from the rejection of any executory contracts or unexpired leases shall be filed within thirty (30) days following the rejection and shall be treated as Class 4A or 4B Claims, as applicable, to the extent Allowed.  Any person seeking to assert such a Claim who fails to file a proof of claim within this thirty (30) day period shall be deemed to have waived said Claim, and shall be forever barred from asserting a Claim based on such rejection.

## ARTICLE XI
## MODIFICATION OF THE PLAN

The Debtors reserve the right, pursuant to Section 1127(a) of the Bankruptcy Code, to amend or modify the Plan prior to the Confirmation of the Plan.  The Plan may be modified, without notice or hearing, or on such notice and hearing as the Bankruptcy Court deems appropriate, if the Bankruptcy Court finds that the proposed modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard to the proposed modification.  Without limiting the foregoing, the Plan otherwise may be modified after notice and hearing.  In the event of modification at or before Confirmation, any votes in favor of the Plan shall be deemed to be votes in favor of the Plan as modified, unless the Bankruptcy Court finds that the proposed modification materially and adversely affects the rights of the parties in interest that cast such votes.

## ARTICLE XII
## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction, notwithstanding entry of the Confirmation Order and notwithstanding the occurrence of the Effective Date of the Plan, for the following purposes:

   a)     to enforce all Causes of Action which exist on behalf of either Debtor, their Estates, or the Post-Confirmation Debtors pursuant to the provisions of the Plan or applicable law;

   b)     to enter orders and injunctions and restraints to enforce the provisions of the Plan;

   c)     to determine Claims asserted under Section 507(a)(2) of the Bankruptcy Code, including claims for compensation and reimbursement of expenses accruing prior to the Confirmation Date;

   d)     to determine any Disputed Claims or disputes concerning the validity of or the market value of any collateral underlying any Secured Claim;

e)  to enter orders regarding interpretation, implementation, and enforcement of the Plan, or any document created in connection with the Plan;

f)  to conduct hearings and to enter orders modifying the Plan as provided herein or in the Bankruptcy Code;

g)  to determine any and all applications, Claims, adversary proceedings, contested or litigated matters pending on the Confirmation Date or filed prior to entry of a Final Decree;

h)  to determine any motions for rejection or assumption of executory contracts or unexpired leases, and to determine Claims resulting from rejection of executory contracts and unexpired leases;

i)  to allow, disallow, and estimate, liquidate, or determine any Claims against either Debtor, including Claims for tax liability, but excluding any Claims deemed allowed by the Plan, and to enter or enforce any order requiring the filing of any such Claim before a particular date; and

j)  to enter orders required for the administration of the Plan, including, but not limited to:

  (i)  resolution of disputes pertaining to the amounts of payments under the Plan to Claimants;

  (ii)  conducting Postconfirmation valuation hearings as required by the Plan or authorized by the Bankruptcy Code; and

  (iii)  exercising jurisdiction over any other matter provided for or consistent with the provisions of Chapter 11 of the Bankruptcy Code.

## ARTICLE XIII
## CONDITIONS PRECEDENT TO CONFIRMATION

**13.01 *Conditions Precedent to Confirmation of the Plan.*** Entry of the Confirmation Order, effectiveness of Confirmation of the Plan, and the obligation of the Debtors and/or Post-Confirmation Debtors to consummate the Plan are conditioned upon the Bankruptcy Court having made findings and determinations regarding the Plan as will enable the entry of the Confirmation Order in a manner consistent with the provisions of the Plan and in form and substance satisfactory to the Plan Proponents.

**13.02 *Conditions Precedent to Effective Date*.** The Effective Date will not occur and the Plan will not be consummated until:

(a)      The Confirmation Order shall have been entered by the Bankruptcy Court and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto.

(b)      All requisite filings with governmental authorities and third parties shall have become effective, and all governmental authorities and third parties shall have approved or consented to the Plan, to the extent required.

(c)      All documents contemplated by the Plan to be executed and delivered on or before the Effective Date shall have been executed and delivered.

**13.03** *Waiver of Conditions Precedent*.  Other than Section 13.02(a), each condition precedent in Section 13.02 may be waived or modified by the Plan Proponents without further Bankruptcy Court approval.

## ARTICLE XIV
## ACCEPTANCE OR REJECTION OF THE PLAN

**14.01** *Classes Entitled to Vote.* Holders of Allowed Claims in each impaired Class shall be entitled to vote to accept or reject the Plan. Each unimpaired Class of Claims shall be deemed to have accepted the Plan, and Holders of Claims in such Classes shall not be entitled to vote to accept or reject the Plan.

**14.02** *Class Acceptance Requirement.*      Under Section 1126(c) of the Bankruptcy Code, an impaired Class of Claims has accepted the Plan if the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class who have voted on the Plan have voted to accept the Plan.

**14.03** *Cramdown.* The Debtors hereby request confirmation pursuant to the "cramdown" provisions of Section 1129(b) of the Bankruptcy Code with respect to any impaired Class that votes to reject the Plan.

**14.04** *Claim Designation.*    The Debtors reserve the right to seek to designate, pursuant to Section 1126(e) of the Bankruptcy Code, any Holder of any Claim whose vote on the Plan was submitted for an improper purpose or was otherwise not submitted in good faith.

## ARTICLE XV
## MISCELLANEOUS

**15.01** *Objections to Claims.* On and after the Effective Date, the Post-Confirmation Debtors shall have the exclusive right to make, file, prosecute, and resolve objections to Disputed Claims (whether scheduled or filed).  All such objections shall be filed within ninety (90) days after the Effective Date ("**Claims Objection Deadline**"); however, extensions of the ninety (90) day period may be sought following Designated Notice.  If a party in interest files a written objection with the Bankruptcy Court with respect to any proposed extension of time and

serves a copy of said objection upon the party requesting the extension and his or her counsel within ten (10) days from the service of Designated Notice of the proposed extension, then the Bankruptcy Court shall schedule a hearing with respect to said objection and the deadline for the party requesting the extension to object to Claims as authorized under the Plan, shall be deemed extended through the conclusion of such hearing.  If no objection is timely filed and served, the proposed extension shall be deemed granted without further authorization.  The failure to object to any Claim prior to the commencement of the hearing on Confirmation of the Plan shall not be deemed to be a waiver of the right to object thereafter to such Claim in whole or in part for the purpose of distribution.  Notwithstanding anything to the contrary in Section 15.01 of the Plan, with respect to any proceeding brought by the Post-Confirmation Debtors to prosecute any Cause of Action retained by the Post-Confirmation Debtors, if any party in such proceeding is also the Holder of a Claim against the Debtors or their Estates,  the Post-Confirmation Debtors shall be permitted to assert in such proceeding objections to the Claim of such party.

**15.02   *Compliance with Tax and Securities Law Requirements.*   In connection with the Plan, the Debtors will comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements.  The effectuation of the Plan shall be subject to compliance with all applicable state and federal securities laws.

**15.03   *Further Actions.*      Pursuant to Bankruptcy Code Section 1142(b), the Confirmation Order shall act and operate as an order of the Bankruptcy Court directing the Debtors, the Post-Confirmation Debtors and/or any other necessary parties to execute and deliver or join in the execution and delivery of any instrument required to affect any transfer and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the Plan.  Any transfer taxes arising from transfers of property ordered or made pursuant to the Plan shall be treated in accordance with Section 1146 of the Bankruptcy Code.

**15.04   *U.S. Trustee's Fees.*   All fees due and owing under 28 U.S.C. § 1930 for periods through the Effective Date, to the extent not paid prior to the Effective Date, shall be paid by the Post-Confirmation Debtors as they become due.    Following the Effective Date, Post-Confirmation Debtors shall continue to pay timely all Chapter 11 quarterly fees as required by 28 U.S.C. § 1930(a)(6), until a Final Decree is entered or the Case is otherwise closed.

**15.05   *Governing Law.*   Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or to the extent that the Plan or the provision of any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan provides otherwise, the rights and obligations arising under the Plan will be governed by, construed, and enforced in accordance with the laws of the State of Georgia, without giving effect to the principles of conflicts of law thereof.

**15.06   *Severability.* Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

**15.07   *Revocation.*** The Plan Proponents reserve the right to revoke and withdraw the Plan prior to Confirmation.

**15.08   *Effect of Withdrawal or Revocation.*** If the Plan Proponents revoke or withdraw the Plan prior to Confirmation, then the Plan shall be deemed null and void.

**15.09   *Closing the Case.*** The Post-Confirmation Debtors shall be authorized to apply to the Bankruptcy Court for authority to close these Cases at any time when the Plan has been substantially consummated or as otherwise appropriate. Any Creditor or the Post-Confirmation Debtors may petition to reopen either Case at any time within the seven (7) year period immediately following the Effective Date of the Plan for the purpose of having the Bankruptcy Court interpret any provision of the Plan or enforce the rights of any party under the Plan or under the Bankruptcy Code.

**15.10   *Headings.*** Headings are utilized in the Plan for the convenience of reference only and shall not constitute a part of the Plan for any other purpose.

**15.11   *Extensions of Time.*** The time for the Debtors or the Post-Confirmation Debtors to take any action under the Plan may be extended by the Bankruptcy Court after notice and a hearing.

**15.12   *Designated Notice.*** Notwithstanding any other provision of the Plan, when notice and a hearing is required with regard to any action to be taken by the Post-Confirmation Debtors, Designated Notice shall be sufficient. With respect to any proposed action to be taken as authorized under the Plan which may only be taken following Designated Notice, the following procedures shall apply. After Designated Notice of the proposed action has been provided as required under the Plan, if any party in interest files with the Bankruptcy Court within ten (10) days of the service of such Designated Notice a written objection to the proposed action, and serves a copy of said objection upon the Debtors and/or the Post-Confirmation Debtors, as applicable, and their counsel, then the Bankruptcy Court shall schedule a hearing with respect to such objection and, unless the objection is withdrawn by agreement of the parties, the proposed action may only be taken if approved by Final Order of the Bankruptcy Court. If no objection is timely filed and served, the proposed action may be taken without further authorization or approval by the Bankruptcy Court.

## ARTICLE XVI
## REQUEST FOR CONFIRMATION

The Debtors, as Proponents of the Plan, request Confirmation of the Plan in accordance with Section 1129(a) of the Bankruptcy Code or, if any impaired class fails to accept the Plan, the Debtors reserve the right to request Confirmation in accordance with Section 1129(b) of the Bankruptcy Code.

**[Signatures on next page]**

This 15th day of December, 2025.

215 PAPER MILL RD PCPRE, LLC

By:    Randy Lawrence
Its:    Authorized Officer

1291 BRITAIN DRIVE PCPRE, LLC

By:    Randy Lawrence
Its:    Authorized Officer

SCROGGINS, WILLIAMSON & RAY, P.C.

/s/ Ashley R. Ray
ASHLEY REYNOLDS RAY
Georgia Bar No. 601559
J. HAYDEN KEPNER, JR.
Georgia Bar No. 416616
4401 Northside Parkway, Suite 230
Atlanta, GA 30327
(404) 893-3880

Counsel for the Debtors

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a true and correct copy of the attached

**DISCLOSURE STATEMENT TO ACCOMPANY JOINT PLAN OF LIQUIDATION** by causing it to be

deposited in the United States Mail in a properly addressed envelope with adequate postage

affixed thereon to the following:

OFFICE OF THE UNITED STATES TRUSTEE
Suite 362, Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, GA  30303

This 15th day of December, 2025.

4401 Northside Parkway             Respectfully submitted,
Suite 230
Atlanta, GA 30327                  SCROGGINS, WILLIAMSON & RAY, P.C.
T: (404) 893-3880
F: (404) 893-3886
E: aray@swlawfirm.com              /s/ Ashley R. Ray
    hkepner@swlawfirm.com          ASHLEY REYNOLDS RAY
                                   Georgia Bar No. 601559
                                   J. HAYDEN KEPNER, JR.
                                   Georgia Bar No.  416616

                                   Counsel for the Debtors